**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

Yussuf M.A.,

Petitioner,

v.

Todd Blanche, United States Attorney General; Markwayne Mullin, Secretary, U.S. Department of Homeland Security; David J. Venturella, Acting Director, U.S. Immigration & Customs Enforcement; Marco Charles, Acting Executive Associate Director, Enforcement and Removal Operations; Ryan Shea, Sheriff, Freeborn County Adult Detention Center,

Respondents.

No. 26-cv-3969 (KMM/DLM)

**ORDER**

---

This matter is before the Court on Petitioner Yussuf M.A.'s ("Petitioner" or "Mr. M.A.") Petition for a Writ of Habeas Corpus. [Pet., Dkt. 1.] Mr. M.A. claims that his recent arrest and re-detention violate his constitutional due process, equal protection, and fourth amendment rights, and that his continued detention following expiration of the statutory removal period violates the Immigration and Nationality Act ("INA"). For the following reasons, Mr. M.A.'s Petition is denied.

## BACKGROUND

Mr. M.A. is a native and citizen of Somalia. He entered the United States in September 2022, seeking asylum protection upon entry into the country. [Dkt. 1 ¶ 27.] On May 29, 2024, his asylum application was denied, and Mr. M.A. was ordered removed

from the United States. [*Id.* ¶ 28.] He timely filed an appeal to the Board of Immigration Appeals, which was pending until April 30, 2026, at which point Mr. M.A.'s appeal was dismissed and his removal order became administratively final. [*Id.* ¶¶ 28, 32.]

During the course of his appeal, Mr. M.A. remained on supervised release with Immigration & Customs Enforcement ("ICE"). He largely complied with his supervised release requirements but missed a scheduled check-in "due to work commitments and having forgotten the appointment." [*Id.* ¶¶ 29–30.] In November 2025, Mr. M.A. showed up for his next scheduled check-in, where he was detained by ICE. [*Id.* ¶ 31.] He has remained in ICE custody since.

Petitioner filed the matter before the Court on September 11, 2026, challenging, first, the lawfulness of his November 2025 arrest and re-detention and, second, the lawfulness of his ongoing detention. [*Id.* ¶ 34.]

## DISCUSSION

A federal court can order the release of a person who is detained in violation of the Constitution or laws of the United States. 28 U.S.C. § 2241(c)(3). Mr. M.A. claims that he is unlawfully detained because (1) his arrest and re-detention violated various

constitutional protections;[1] and (2) there is no significant likelihood that Respondents can remove him in the reasonably foreseeable future (Mr. M.A.'s *Zadvydas* claim).[2]

## I. Analysis

Under the INA, when a noncitizen has been ordered removed from the United States and that removal order becomes administratively final, the government shall remove the person within a period of 90 days, known as the "removal period." 8 U.S.C. § 1231(a)(1)(A). The INA requires the government to detain the noncitizen during the 90-day removal period. 8 U.S.C. § 1231(a)(2).

In *Zadvydas v. Davis*, the Supreme Court placed limits on how long a noncitizen may be detained after the removal period has expired. The Court recognized that "a statute

---

[1] The Court has carefully considered the claim Mr. M.A. raised in his initial filing related to his unlawful arrest and re-detention, as well as the government's response. The government argues that Mr. M.A.'s challenge to the legality of his arrest is precluded by the fact that he has a final removal order, and they cite a Report and Recommendation prepared by Judge Elkins in which she states this in a footnote. Dkt. 5 at 4 (citing *Esequiel P.R. v Blanche*, No. 26-cv-2941 (KMM/SGE), 2026 WL 2478514, at *2 n. 4 (D. Minn. Aug. 1, 2026), *report and recommendation adopted as modified*, 2026 WL 2477471 (D. Minn. Aug. 24, 2026) ("The Court makes this recommendation despite having questions about the legality of Esequiel's arrest, as noted above. Even if the arrest was unlawful, however, it appears that Esequiel would still be subject to detention under § 1231.")). However, the government omits that when the Court adopted the R&R in that case, it declined to adopt Judge Elkins' reasoning on that point. *Esequiel P.R. v. Mullin*, No. 26-cv-2941 (KMM/SGE), 2026 WL 2477471, at *1 n. 1 (D. Minn. Aug. 24, 2026) ("The Court *does not* adopt the R&R to the extent it suggests that when a noncitizen is subject to mandatory detention during the 90-day removal period after a removal order becomes final, *see* 8 U.S.C. § 1231(a)(2), an unlawful arrest can never be the basis of habeas relief.") (emphasis added). Nonetheless, in light of the unique facts of this case, the lack of a Reply to this argument by the Petitioner, and the imminence of Mr. M.A.'s removal, the Court declines to conclude that Mr. M.A.'s release is required due to the circumstances of his arrest.

[2] *Zadvydas v. Davis*, 533 U.S. 678 (2001).

permitting indefinite detention of an alien would raise a serious constitutional problem." 533 U.S. at 690. However, the Court explained that the detention of a noncitizen subject to a final order of removal is permissible so long as the individual's removal is "reasonably foreseeable." *Id.* at 699–700. It held: (1) the detention of an individual for six months or less following a final order of removal is presumptively reasonable; and (2) after six months, if the noncitizen "provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id.* at 701. Mr. M.A.'s *Zadvydas* claim rests on his assertions that he has remained in custody past the time limit laid out in *Zadvydas* and that the government has failed to provide sufficient evidence that his removal is significantly likely in the reasonably foreseeable future. [Dkt. 1 ¶¶ 51–56.]

In their initial response, the government asserted that it had secured travel documents for Mr. M.A. and would schedule a removal flight for Mr. M.A. before those documents expired on December 8, 2026. [Resp. to Pet., Dkt. 5 at 5; Vandervaart Decl., Dkt. 6 ¶ 18.] The government also pointed to the fact that ICE/ERO has flights to Somalia scheduled for October 25 and November 25, 2026. [Dkt. 5 at 5–6; Dkt. 6-4.] Moreover, in their most recent filing the government provided notice that Petitioner is scheduled for transfer out of the District of Minnesota and scheduled for a removal flight that will take place between October 12 and October 15, 2026. [Resps.' Notice to the Court, Dkt. 8 at 1.]

Even acknowledging the limitations of the evidence provided by Respondents in their initial Response,[3] under current circumstances, Mr. M.A.'s detention is not unlawful under the *Zadvydas* framework.

**ORDER**

For these reasons, **IT IS HEREBY ORDERED THAT:**

1. Mr. M.A.'s Petition for Writ of Habeas Corpus [Dkt. 1] is **DENIED.**

2. The matter is **DISMISSED.**

**Let Judgment be entered accordingly.**

Date: October 9, 2026

*s/ Katherine M. Menendez*
Katherine M. Menendez
U.S. District Court Judge

[3] In Plaintiff's Traverse, Dkt. 7, Mr. M.A. challenges the government's assertion that their evidence is sufficient to show a "significant likelihood of removal in the reasonably foreseeable future." *Zadvydas*, 533 U.S. at 701. He notes that the government had not produced the travel documents they referenced in their Response and that the tentative charter flights referenced "concern[ed] a completely different Somali individual" and did not show any travel arrangement specifically for Mr. M.A. [Dkt. 7 at 2.] But, in light of the supplemental information contained in the October 6th update, these concerns do not undermine the government's showing. [*See* Dkt. 8.]